EDOK Criminal Complaint (Revised 6/13)

# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

**UNITED STATES OF AMERICA,**

***Plaintiff,***

**v.**

**KENNETH GLENN MCCARROLL,**

***Defendant.***

SEALED

**CRIMINAL COMPLAINT**

**Case No.** 26-MJ-228-JAR

I, Rebecca Davison, the undersigned complainant, state that the following is true to the best of my knowledge and belief.

On or about June 22, 2026 through June 23, 2026, in the Eastern District of Oklahoma, Kenneth Glenn McCarroll**,** committed the following crimes: Assault of a Spouse, Intimate Partner, and Dating Partner by Strangling and Attempting to Strangle, in violation of Title 18 United States Code, Section(s) 113(a)(8), 1151, and 1152; Assault with a Dangerous Weapon with Intent to Do Bodily Harm, in violation of Title 18 United States Code, Section(s) 113(a)(3), 1151, and 1152; and Use, Carry, Brandish and Discharge of a Firearm During and in Relation to a Crime of Violence in violation of Title 18 United States Code, Section(s) 924(c)(1)(A)(i) and (ii).

I further state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and that this complaint is based on the following facts:

(See attached Affidavit of Rebecca Davison, which is attached hereto and made a part hereof by reference.)

☒ Continued on the attached sheet.

REBECCA DAVISON, Special Agent
Bureau of Alcohol, Tobacco, Firearms, & Explosives

Sworn to on August 20, 2026.

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

Signature of Judicial Officer

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Rebecca Davison, being duly sworn under oath, do hereby depose and state the following:

**AGENT BACKGROUND AND INTRODUCTION**

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) within the meaning of 18 United States Code, Section 3051, and as such, am an officer of the United States who is authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States. I have been employed by the ATF since December 2020. In 2021, I completed the Criminal Investigator Training Program required by the ATF to be an ATF criminal investigator. I also completed the Special Agent Basic Training Academy required by the ATF for all special agents employed by the agency. In connection with my official duties as an ATF Special Agent, I investigate criminal violations of federal firearms laws, federal explosives laws and federal narcotics laws. I have further worked alongside other experienced investigators in relation to firearms and narcotics investigations.

2. This affidavit is made for the limited purpose of establishing probable cause in support of a criminal complaint alleging that Kenneth Glenn MCCARROLL, hereafter referred to as MCCARROLL, a non-Indian, 1) did assault K. E., an Indian, a person who was a spouse, intimate partner, or dating partner, by strangling and attempting to strangle K. E., within the Eastern District of Oklahoma, in Indian country, in violation of Title 18, United States Code, Sections 113(a)(8), 1151, and 1152 – Assault of a Spouse, Intimate Partner, and Dating Partner by Strangling and Attempting to Strangle; 2) did assault K. E., an Indian, with a dangerous weapon with intent to do bodily harm, within the Eastern District of Oklahoma, in Indian country, in

violation of Title 18, United States Code, Sections 113(a)(3), 1151, and 1152 – Assault with a Dangerous Weapon with Intent to Do Bodily Harm; and 3) did knowingly use, carry, and brandish, a firearm, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, Assault with Intent to do Bodily Harm in Indian country, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and (ii) - Use, Carry, Brandish and Discharge of a Firearm During and in Relation to a Crime of Violence.

3. The statements made in this affidavit are based in part on: (a) my personal participation in this investigation; (b) information provided to me by other law enforcement officers; and (c) the training and experience of myself and other law enforcement agents and officers.

**FACTS SUPPORTING PROBABLE CAUSE**

4. On June 23, 2026, MCCARROL's girlfriend, K. E., went to the McAlester Police Department (MPD) to report a domestic assault and battery committed on her by MCCARROLL that occurred on June 22, 2026, and continued through June 23rd. The assault occurred at MCCARROLL's residence located at 330 East Van Buren Avenue, McAlester, OK within the Eastern District of Oklahoma, inside the boundaries of the Choctaw Nation Reservation.

5. K. E. told MPD officers that MCCARROLL beat her during the previous four (4) years, but the past two (2) days were the worst. MPD Officer Corum observed bruises and marks and noted the K. E.'s neck appeared swollen. K. E. stated that these injuries were not normal and demonstrated with two (2) hands how MCCARROLL gripped her neck and choked her. K. E. said MCCARROLL choked her until her tongue poked out of her mouth and she passed out. K. E. further explained that MCCARROLL would hit her on the side of the head and not directly on the face so it would not be visible. The officer noticed an abrasion on the left side of her face and K. E.

stated it was from the previous two (2) days, but she wasn't sure how it happened. K. E. relayed that MCCARROLL hit her multiple times across the face, strangled them, and pointed a firearm at their face during the assault on June 22 - 23, 2026. K. E. said MCCARROLL said "I've got your life in my hands," and "do you understand me bitch? I'll fucking kill you" while he was choking her. When K. E. tried to call 911, MCCARROLL grabbed the phone and threw it against the wall, causing it to shatter. K. E. said that MCCARROLL possessed a firearm when he grabbed the phone and that he then pointed the firearm at her head and said, "go ahead and try to call them, I'll fucking kill you bitch." K. E. said MCCARROLL would make threats that if she called the police, "he would shoot her" and "have a shootout with police until they took him out". K. E. also relayed that MCCARROLL said he knew people in gangs, and they would come get K. E. and "take care of [her]".

6. K. E. stated that on June 23, 2026, MCCARROLL hit and choked her after he observed bible verses that K. E. wrote. He stated, "who the fuck are you writing this code to bitch"? MCCARROLL also poured a can of pork and beans and a soda on their head. MCCARROLL grabbed K. E. by the hair and dragged them across the room. When asked if MCCARROLL pointed a firearm at her, she replied he did not that day but did on June 22, 2026. K. E.'s injuries were photographed by MPD and showed redness, swelling, and bruising of her neck.

7. MPD officers spoke to the K. E.'s mother via telephone on June 23rd. She stated MCCARROLL threatened to shoot K. E.'s brother, or anyone else who came over. She further stated that MCCARROLL said that if she, the police, or her son helped K. E. get away, that he would blow them all away.

8. On June 23, 2026, MPD officers travelled to MCCARROLL's residence at 330 E Van Buren Ave. MCCARROLL was arrested at his neighbor's residence. Upon entering the MPD

patrol vehicle, MCCARROLL stated they could check his house because nobody was there and asked how he could have committed domestic violence if he wasn't there. Then, MCCARROLL stated he wasn't at his house all day but immediately followed up and said he went there to check on K. E.. He also said they went to O'Reilly Auto Parts earlier in the day. MCCARROLL was advised of his *Miranda* rights. He stated he understood his rights and agreed to speak with law enforcement. MCCARROLL stated he previously used drugs but quit. He acknowledged that he would get into arguments with the victim and "wrestling matches". He said the victim would ask MCCARROLL to use drugs and got upset when he declined. When asked what happened earlier that day, he stated the following: that he and the victim had a verbal argument but it was never physical; he got the victim a phone to call her mom; the victim told her mother that they (Victim and MCCARROLL) were just bickering; that they later went to the store and returned home; and that he went to the neighbor's house and "left her alone".

9. MPD officers asked MCCARROLL what happened on June 22, 2026. MCCARROLL said it was "like a cloud". MCCARROLL said K. E. swung at him with a golf club and pointed to a mark on his shoulder. This statement was contradicted by a prior statement by MCCARROLL. On June 21, 2026, MPD officers contacted MCCARROLL at the Oak Hill Cemetery at approximately 8 p.m., asleep on the bench. His speech was slurred and he explained that he was dehydrated and took a break then passed out. MPD then noted that his speech was clear during his interview on June 23rd. He said he only drank two (2) bottles of water but then said there was a Pepsi mixed with whiskey in the barn that someone left. He claimed he must have drank out of that Pepsi. The officer told him that during the encounter at the cemetery, MCCARROLL stated the mark was from hanging a door. When confronted by the different stories, MCCARROLL replied that he was trying to protect K. E. The officer advised MCCARROLL that his stories were

not making sense; he replied, "I know but I was under the influence of alcohol too…". When asked if MCCARROLL put his hands on the K. E. the day before, he stated "not that I'm aware of", and "standing here in my right mind, I don't remember doing it". When asked if he put hands on the K. E. on this date, MCCARROLL stated "no", and "if I was abusing her here, why didn't she just leave". MCCARROLL explained that K. E. broke her own phone and he would pick it up and "slam it on the floor and break it some more". The officer asked if MCCARROLL wanted to add anything to his statement and he said "if I have done anything wrong to [K. E.] I apologize. I didn't mean to. If I had done anything to harm anybody, I wasn't in my right state of mind, and I don't mean to do things that happen that way. I didn't knowingly drink, if I did it was on accident, that was left in the barn, I'm not trying to hurt nobody I love [K. E.] with all my heart I really do and I've been doing right…".

10. MCCARROLL was booked into the Pittsburg County Jail for domestic assault and battery by strangulation, feloniously pointing a firearm, and interfering with a 911 call. The case is currently ongoing in Pittsburg County Court Case CF-2026-165. The online docket indicates that no dismissal for lack of jurisdiction claiming that MCCARROLL is an Indian has been filed as of August 19, 2026.

11. On June 23rd, MPD officers spoke to a neighbor, Tammy, who saw K. E. hit MCCARROLL previously. Tammy did not see anything the previous two (2) days. She said MCCARROLL was at her residence all day sleeping in the chair, but he did go to his house to check on K. E..

12. On July 27, 2026, the Choctaw Nation District Court filed a permanent protective order against MCCARROLL, Case PO-2026-90. I obtained a copy of the final protective

order which states "defendant is prohibited from possession of firearms or ammunition for the term of the order".

13. On August 8, 2026, MCCARROLL sent K. E. two (2) text messages in violation of the protective order. A report was made at MPD the next day when K. E. saw the messages. The texts stated, "What's address love" and "Unblock me on everything please so can messenger". K. E. further stated she is afraid of MCCARROLL because of what he did in the past, that he is very violent, owns several firearms, and that he had pointed them at K. E. on numerous occasions.

14. On August 11, 2026, MCCARROLL again contacted K. E. via text message and a phone call, in violation of the protective order. K. E. reported the violation with MPD and MPD advised MCCARROLL via telephone that each call and text message constituted a violation of the protective order. MCCARROLL stated he would not make further contact.

15. On August 11, 2026, I conducted a non-recorded interview of K. E.. K. E. stated she met MCCARROLL in high school, around 1997. MCCARROLL claimed he was in the military, but they were never able to confirm that. K. E. moved in with MCCARROLL in April 2022 and lived with him until the assault on June 23, 2026. K. E. recalled shooting a full-auto AR-15 style firearm with MCCARROLL about four (4) years ago and that he told K. E. that he was lawfully able to possess automatic firearms. K. E. described the firearm as having three (3) shooting positions: semi-auto, 3-round burst, and fully automatic. K. E. stated that they had experience with these types of firearms in the military and described MCCARROLL's firearms as shooting multiple rounds without having to take the finger off the trigger. MCCARROLL told K. E. both of his AR-15's shot full-auto. K. E. stated that MCCARROLL kept firearms stored behind the wooden panels of the wall near the bathroom area.

16. K. E. also said MCCARROLL possessed a grenade. K. E. was not sure if it was live but stated it was heavy. K. E. described the grenade as oval-shaped, a thick metal band around the middle and brass pieces on top with a ring and pin. It was once dark green colored but believed MCCARROLL painted it grey or black. Additionally, K. E. recalled MCCARROLL kept other explosive like items in a blue and white ice chest/cooler, which was the residence on June 23, 2026. Inside the cooler were three (3) separate coils of cord that K. E.. believed was detonation cord. They were different colors with a firework-like filling and a plastic coating. K. E. believed it was like detonation cord used in training they attended. K. E. also observed a plastic bag containing items that were described as about 2" long by ½" wide, skinny, worn clear colored, and had a piece of metal inside. On the outside was writing, "detonation device". K. E. recalled seeing about 50 – 75 of the items in the bag. K. E. also stated MCCARROLL kept books locked in a mechanic style toolbox in the house and that he referenced the books when he soldered things. Additionally, MCCARROLL said he possessed C-4, an explosive compound. K. E. described the claimed C-4 as grey, sticky strips, and that MCCARROLL had about four or five (4 or 5) strips that were about 1" wide and 3" to 5" long. In this agent's training and experience this appearance can be consistent with C-4. MCCARROLL claimed to have an "Explosives Handler" certificate he obtained from working in the oil field. K. E. also stated that she observed a container labeled "gun powder" and green fuse at MCCARROLL's residence. In my training and experience, these two items can be used in manufacture of explosives and explosive devices.

17. A search of the National Firearms Registration and Transfer Record did not locate any firearms or explosives registered to MCCARROLL.

18. K. E. stated MCCARROLL threatened her when she wouldn't be intimate with him and that MCCARROLL said he rigged the door so the house would blow up if she tried to leave. He said he rigged it with an old cell phone to blow up from the outside.

19. I obtained records from the Choctaw Nation that confirmed Victim is a registered member of the Choctaw Nation. K. E. verbally confirmed that she possesses a Certified Degree of Indian Blood. The Choctaw Nation is a federally recognized tribe.

20. I spoke to K. E. about MCCARROLL's non-Indian status. K. E. relayed that, to her knowledge, MCCARROLL did not receive any tribal benefits and did not have a Certified Degree of Indian Blood. I inquired with various tribes to see if MCCARROLL was a registered member. The Cherokee Nation, Choctaw Nation, Chickasaw Nation, Muscogee (Creek) Nation, Absentee Shawnee Nation and the Seminole Nation all confirmed that MCCARROLL was not a registered member.

21. Since this affidavit is being submitted for the limited purpose of enabling a judicial determination of whether probable cause exists to justify the issuance of a criminal complaint for MCCARROLL, I have not included each and every fact known concerning this investigation to me and others involved in this matter. I have set forth only the facts that I believe are essential to establish the necessary foundation for a criminal complaint.

22. Based on the above and the totality of the circumstances, I believe that probable cause exists to issue a criminal complaint against Kenneth Glenn MCCARROLL for Assault of a Spouse, Intimate Partner, and Dating Partner by Strangling and Attempting to Strangle, in violation of Title 18, United States Code, Sections 113(a)(8), 1151, and 1152; Assault with a Dangerous Weapon with Intent to Do Bodily Harm, in violation of Title 18, United States Code, Sections 113(a)(3), 1151, and 1152; and Use, Carry, Brandish and Discharge of a Firearm During and in

Relation to a Crime of Violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and (ii).

REBECCA DAVISON, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to this 20th day of August, 2026

UNITED STATES MAGISTRATE JUDGE